**THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BINH THAI NGUYEN,** | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-56-HE** |
| | ) | |
| **PAMELA BONDI et. al.,[1]** | ) | |
| | ) | |
| **Respondents** | ) | |

## REPORT AND RECOMMENDATION

Binh Thai Nguyen seeks habeas corpus relief under 28 U.S.C. § 2241. (ECF No. 1). Respondent has responded and Petitioner has replied. (ECF Nos. 15 & 18). United States District Judge Joe Heaton referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). For the reasons set forth below, the undersigned recommends that the Court **GRANT** habeas relief to Petitioner and release him from custody immediately under the terms of his previous Order of Supervision.

## I.    FACTUAL BACKGROUND

Petitioner is a citizen of Vietnam who entered the United States in 1990 and later became a lawful permanent resident. (ECF No. 1:1, 4). After arrests and convictions in 1992 and 2012, Petitioner was ordered removed from the United States on August 9, 2012, but was subsequently released on an Order of Supervision (OOS) (ECF Nos. 1:1,

---

[1] Markwayne Mullin was confirmed as Secretary of the Department of Homeland Security on March 23, 2026. He replaces Kristi Noem. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the officer's successor is automatically substituted as a party.

2, 7, 15-4).[2] On or about December 9, 2025, Immigration Customs and Enforcement (ICE) officials re-detained Petitioner and took him into custody. (ECF No. 1:2). Although Petitioner was given a "Notice of Alien of File Custody Review" on January 2, 2026, the Notice did not specify reasons for Petitioner's re-detainment. (ECF No. 1-1). Petitioner does not have a valid Vietnamese passport, birth certificate or other original evidence of Vietnamese citizenship. (ECF No. 1:8). Petitioner does not know whether the government has submitted a travel document request for him but he reasonably believes Respondents have not as he has not been interviewed by the Vietnamese Embassy. (ECF No. 1:8). Petitioner has been told that if Vietnam will not take him, he would be deported to a third country. (ECF No. 1:8). Petitioner is currently detained at the Kay County Justice Facility.[3]

## II.    PETITIONER'S CLAIMS

Petitioner alleges:

- Respondents violated its own procedures by improperly revoking Petitioner's OOS because: 1) the person revoking his OOS did not have the authority to do so; 2) Respondents failed to making "specific findings" as to the reason behind the revocation; 3) Respondents did not provide Petitioner with a "prompt" informal interview before it revoked his OOS; 4) Respondents potentially failed to abide by its own promise in the Order for Release to give Petitioner the right to an orderly departure; and 5) Respondents failed to have a hearing before a neutral adjudicator before revoking Petitioner's OOS;

- Respondents violated its own procedures re-detaining Petitioner without any specific findings of dangerousness or flight risks, constituting an *ultra vires* action;

- Respondents bear the burden of proving removal is "reasonably foreseeable" in the future which they have failed to do; and

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Mar. 26, 2026).

[3] *See* https://locator.ice.gov/odls/#/results (last visited Mar. 26, 2026).

- Respondents' actions violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act and implementing regulations, the Administrative Procedure Act, and the *Accardi* doctrine.

(ECF No. 1:2-3).

In Count One, Petitioner alleges a violation of the Fifth Amendment right to Substantive Due Process  because ICE officials have: (1) re-detained Petitioner without finding that he poses a flight risk or is a danger to the community and (2) not secured necessary travel documents for Petitioner's removal. (ECF No. 1:17).

In Count Two, Petitioner alleges a violation of the Fifth Amendment right to Procedural Due Process because ICE officials revoked Petitioner's OOS without providing proper notice and opportunity to respond. (ECF No. 1:17-18).

In Counts Three-Five, Petitioner alleges several violations of the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA). (ECF No. 1:19-24).

In Count Six, Petitioner alleges that Respondent's detention of Petitioner constitutes an unlawful *ultra vires* action. (ECF No. 24-25).

In Count Seven, Petitioner alleges a violation of the *Accardi* Doctrine. (ECF No. 1:25-26).

As relief, Petitioner requests: immediate release subject to the same conditions of his prior OOS as well as declaratory and injunctive relief. (ECF No. 1:28-29).[4]

---

[4] Petitioner also seeks "reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)." (ECF No. 1:29). But to the extent Petitioner may be entitled to EAJA fees and costs, he must seek those separately. 28 U.S.C. § 2412(d)(1)(B); *see also Daly v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the undersigned does not address this request at this juncture.

### III.   STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### IV.   LEGAL FRAMEWORK FOR THE DETENTION OR RELEASE OF ALIENS SUBJECT TO A FINAL ORDER OF REMOVAL

Title 8, Section 1231(a)(2)(A) of the United States Code mandates that "the Attorney General shall detain" an alien who is ordered to be removed from the country. However, the length of detention cannot be indefinite: in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). This is known as the "removal period," and begins at the latest of: (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.*; *see Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody.").

However, an exception exists for certain aliens, including aliens who have violated criminal law, who "may be detained beyond the removal period." § 1231(a)(6); *see*

*Zadvydas*, 553 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)). However, even under these circumstances, a non-citizen may only be detained past the 90-day removal period following a removal order if found to be "a risk to the community or unlikely to comply with the order of removal" or if the order of removal was on specified grounds. *Id.* § 1231(a)(6). But even where initial detention past the 90-day removal period is authorized, if "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700. The Court further specified that detention is presumptively reasonable for only six months beyond the original 90-day removal period. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Pursuant to 8 U.S.C. § 1231(a)(3), a non-citizen with a final order of removal "who is not removed within the [90-day] removal period . . . shall be subject to [an order of] supervision under regulations prescribed by the Attorney General." Once an OOS has been issued, it may be revoked and a non-citizen may be re-detained if: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order . . . ; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. §

241.4(l)(2); *see also id.* § 241.13(i) (permitting revocation of an order of supervision only if a non-citizen "violates any of the conditions of release"). Upon revocation of an order of supervision, ICE must give a non-citizen notice of the reasons for revocation and a prompt interview to respond. 8 C.F.R. § 241.4(l)(1).

Following the Supreme Court's holding, the *Zadvydas* challenge to continued detention was codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[5] These regulations were in effect at the time of Petitioner's release on an OOS in 2012 and his re-detention in 2025.

## V.    PETITIONER IS ENTITLED TO HABEAS RELIEF BECAUSE ICE DID NOT ADHERE TO ITS OWN REGULATIONS

Petitioner argues that ICE's revocation of his OOS was "not in accordance with the INA and implementing regulations governing who may lawfully revoke an order of supervision and under what circumstances." (ECF No. 1:20). The Court should agree.

In Counts One-Three, Petitioner contends:

- When ICE issued [him] an [OOS], it failed to find that he was either a danger to the community or a flight risk;

---

[5] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247 (F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

- The revocation of Petitioner's OOS was not authorized by the proper officials in accordance with the law;

- In revoking the OOS, Respondents failed to provide Petitioner with proper notice and opportunity to respond; and

- Before revoking the OOS, Respondents did not make findings that Petitioner was a danger to the community or a flight risk; was unlikely to comply with a removal order; or that his conduct indicated release would no longer be appropriate, i.e.—that he had violated any condition of release;

- In revoking the OOS, Respondents could not make findings that the purposes of Petitioner's release had been served or that it was appropriate to enforce a removal order, because it had yet to make final arrangements for Petitioner's removal; and

- To date, ICE has not secured necessary travel documents for Petitioner's removal.

(ECF No. 1:17-21).

Respondents contend that "this Court lacks jurisdiction over Petitioner's challenge to his re-detention to effectuate his removal" but "[e]ven if the Court had jurisdiction to consider the basis for Petitioner's re-detention, [the] claim should be denied." (15:25, 27). According to Respondents, they "properly exercised their discretion under 8 C.F.R. § 241.4(l)(2) to revoke the Petitioner's Order of Supervision." (ECF No. 15:27). Additionally, Respondents assert that habeas relief is not appropriate on a claim regarding regulatory violations. (ECF No. 15:29). The undersigned finds that it has jurisdiction to entertain Petitioner's claim, that ICE did not abide by its own regulations with regard to Petitioner's re-detention, and habeas relief is appropriate.

## A.    The Court Has Jurisdiction to Consider the Petition

Respondents argue that "[r]e-detaining a noncitizen for purposes of removal constitutes an enforcement mechanism of a removal order and, accordingly, a district

court lacks jurisdiction to hear it. Petitioner's detention is for the purpose of executing his removal order. This falls squarely within the purview of §§ 1252(g) and (b)(9), and the Court accordingly lacks jurisdiction to consider his challenge." (ECF No. 15:27).

Citing *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 298 (3d Cir. 2020) and the pertinent regulations, Respondents state:

> The Court in *Tazu* noted the Petitioner's three-day re-detention and that "[i]f courts had not intervened, it would have removed him just three-and-a-half weeks after re detaining him." The Court clarified that Tazu's re-detention was "simply the enforcement mechanism the Attorney General picked to execute his removal," and Section 1252(g) thus funnel[ed] review away from the District Court. Although the detention in *Tazu* was a three-day detention, the same principle applies here. Petitioner has been detained in order to execute a valid removal. As such, this Court lacks jurisdiction over his claim under § 1252(g).
>
> Another provision of Section 1252 bars this Court's review. 8 U.S.C. § 1252(b)(9) states that if a claim "aris[es] from any action taken or proceeding brought to remove an alien," then review of the claim "shall be available only in judicial review of a final order." As the *Tazu* Court noted, "the legal questions he raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus "aris[e] from") an "action taken" to remove him there.

(ECF No. 15:26). The Court should reject Respondent's arguments.

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* More recently, in *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) the Court reaffirmed this narrow reading,

explaining that *Reno* "did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." Instead, the statutory language refers "to just those three specific actions themselves." *Id.*

The undersigned is not persuaded that § 1252(g) forecloses review of Petitioner's claims. Here, Petitioner "does not ask the Court to review the underlying merits of the removal decision. Nor does he ask the Court for a blanket stay of removal.[6] Rather, he asks that he not be *unlawfully* removed without adequate notice and due process." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 946-47 (D. Colo. 2025) (internal quotation marks omitted). Additionally, the Court should find that *Tazu* is factually distinguishable from Petitioner's case. In *Tazu*, the Third Circuit held that it was foreclosed from reviewing "a brief door-to plane detention" by ICE because such detention "is integral to the act of "execut[ing] [a] removal order[ ]." 975 F.3d at 298. Here, "the evidence in the record does not suggest that [Petitioner's] removal was or is impending . . . such that his re-detention was a brief and integral part of executing his removal order." *Jimenez Chacon v. Lyons*, --- F. Supp. 3d. ----, No. 25-cv-977-DHU-KBM, 2025 WL 3496702, at *6 (D.N.M. Dec. 4, 2025). Thus, the undersigned concludes that § 1252(g) does not bar this Court from exercising jurisdiction to consider Petitioner's challenge to his detention.

---

[6] To the contrary, Petitioner is willing to return to Vietnam and does not seek to evade deportation. *See* ECF No. 1:4.

Likewise, the Court should conclude that the Court does not lose jurisdiction under 8 U.S.C. § 1252(b)(9). Citing *Jennings v. Rodriguez*, 583 U.S. 281, 292- 95 (2018), the court in *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) noted that district courts in the Second Circuit "have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay*, 781 F. Supp. 3d at 152 (citing *Torres-Jurado v. Biden*, 2023 WL 7130898 (S.D.N.Y. Oct. 29, 2023) at *2 (collecting cases); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 264 (W.D.N.Y. 2024). The *Ceesay* court concluded Petitioner was not challenging the legality of his removal order, but instead was arguing that "his detention was unlawful because the government improperly revoked the order of supervision under which he had been released for more than a decade." *Ceesay*, 781 F. Supp. 3d at 153-154. The Court should find this reasoning applicable here. In sum, the Court should find that neither § 1252(b)(9) nor § 1252(g) precludes it from exercising jurisdiction over the instant Petition.

### B. ICE Failed To Abide By Its Regulations When It Revoked Petitioner's OOS

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979). Two separate provisions in the Code of Federal Regulations deal with the revocation of release

with regard to an OOS: 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i). *See Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *2 (S.D. Cal. Nov. 19, 2025) ("Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13"). "Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where ICE has formally determined that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." *Grigorian v. Bondi*, 2025 WL 2604573, at *4-5 (S.D. Fla. Sept. 9, 2025).

Petitioner's OOS dated November 13, 2012, states: "Because this Agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions." (ECF No. 15-4:1). This language suggests that the OOS was issued after a determination that there was no significant likelihood that he would be removed in the reasonably foreseeable future and is, therefore, governed by 8 C.F.R. § 241.13. *See Lee v. Oddo*, No. CV 25-452J, 2026 WL 523154, at *3 n.5 (W.D. Pa. Feb. 25, 2026) ("Respondents argue that Petitioner has not established that his OSUP is governed by 8 C.F.R. § 241.13. This is a truly remarkable assertion, given the scope of the regulation as stated in subsection (a) thereof, and the language in Petitioner's 2019 Order of Supervision ('Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions.')") (citation modified); *Hernandez-Castro v. Lyons*, No. 1:25-CV-01574 JLT SAB, 2025 WL 3771344, at *6 (E.D. Cal. Dec. 31, 2025) ("Petitioner's order of supervision states that because 'the agency

has not effected your deportation or removal during the period proscribed by law, it is ordered that you be placed under supervision.' This suggests that § 241.13(b)(1) is the controlling regulation . . . .) (internal quotation marks omitted).

Petitioner argues that both 8 C.F.R. §§ 241.13 and 241.4 require ICE officials to follow procedures prior to his re-detention and their failure to do so violated his Due Process rights. (ECF No. 1:10-12, 19-21, 26-27). Respondents contend that they "properly exercised their discretion under 8 C.F.R. § 241.4(l)(2) to revoke the Petitioner's Order of Supervision." (ECF No. 15:27). No matter which provision applies, ICE has failed to abide by its regulations.

### 1.    8 C.F.R. § 241.13(i)

### a.    Authority for the Revocation

ICE may revoke an OOS and "return the alien to custody" if he violates the conditions of supervised release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). In the case of "changed circumstances," "the burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (citation modified). The parties dispute whether Respondent has met this burden, but the Court need not resolve the dispute based on the fact that the evidence clearly establishes that Petitioner violated the conditions of his supervised release, as evidenced by his criminal behavior from 2015-2017 and 2019-2025. *See* 15-2:3-7. In light

of Petitioner's multiple arrests and convictions, ICE officials had the authority to revoke Petitioner's OOS pursuant to 8 C.F.R. § 241.13(i).

### b.    Violation of § 241.13(i)(3)

Petitioner also alleges that he was not notified of the reasons for revocation of his release and that Respondents did not conduct an initial informal interview promptly after his return to custody to afford him an opportunity to respond to the reasons for revocation stated in the notification, as required by § 241.13(i)(3). (ECF No. 1:10-11). Respondents acknowledge Petitioner's claims as they pertain to § 241.13(i), but fail to address them, instead arguing only that the revocation was proper under 8 C.F.R. § 241.4(l)(2). *See* ECF No. 15:27-29. The undersigned notes that Petitioner was provided a "Notice to Alien of File Custody Review," but that document does not address the reasons for his revocation. (ECF No. 1-1). Accordingly, the undersigned assumes that no such Notice exists. ICE's regulations, however, provide that a Revocation of Release Notice should have been provided to Petitioner and should have stated the reasons for his revocation of release. See 8 C.F.R. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release."). Further, with no evidence to the contrary from Respondents, the undersigned also concludes ICE did not comply with requirements for an "initial informal interview" under § 241.13(i)(3) so Petitioner could respond to ICE's basis for his revocation and re-detention.

### 2.    8 C.F.R. § 241.4(l)

ICE also failed to properly conform to the requirements of 8 C.F.R. § 241.4(l). Respondents allege that 8 C.F.R. § 241.4(l)(2) "contains no requirement that ICE provide

an interview or advance notice upon re-detention." (Doc. 13, at 22). This is an incorrect

interpretation of that regulation.

Revocation under § 241.4 may occur under the following circumstances:

(1)   Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . **Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.**

(2)   *Determination by the Service.* The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

(i)   The purposes of release have been served;

(ii)   The alien violates any condition of release;

(iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)   The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

(3)   Timing of review when release is revoked. If the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, the HQPDU Director shall schedule the review process in the case of an alien whose previous release or parole from immigration custody pursuant to a decision of either the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner under the procedures in this

> section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section.

8 C.F.R. § 241.4(l) (emphasis added). Respondents contend that Petitioner's present detention was initiated pursuant to § 241.4(l)(2), which they argue does not contain language requiring notice of revocation and the informal interview mandated by § 241.4(l)(1). (ECF No. 15:27-29). However, "courts have held that the same requirements" of notice and an interview "constrain revocation of release under [§ 241.4(l)(2)] as well." *Xayakesone*, 2025 WL 3229102, at \*3. In reaching the same conclusion, one court reasoned:

> While not a model of clarity, the text of 8 U.S.C. § 241.4(l) is inconsistent with the Government's argument that Petitioner was not entitled to notice or an interview. The Government concedes that ICE must follow certain procedures if it revokes a noncitizen's release pursuant to paragraph (l)(1) for violation of a condition of release, but argues that those same procedures do not apply to noncitizens whose release is revoked pursuant to paragraph (l)(2) because paragraph (l)(2) provides distinct, discretionary avenues for the revocation of release. But this argument is in significant tension with the fact that paragraph (l)(2) also covers circumstances where a violation of a condition of supervised release is the basis for revoking a noncitizen's release. See 8 C.F.R. § 241.4(l)(2)(ii). This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal.

*Zhu v. Genalo*, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) (internal citations omitted); *see also Duong v. Noem*, No. 3:26CV1002-JES-BJW, 2026 WL 555597, at \*2 (S.D. Cal. Feb.

27, 2026) ("[R]evocation under . . . either § 241.4(l)(1) or § 241.4(l)(2) . . . requires an adequate notice of the reasons for the revocation of release and a prompt initial informal interview to afford the alien an opportunity to respond to the reasons given in the notice."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) ("Courts . . . have interpreted section 241.4(l) as requiring [the procedures of § 241.4(l)(1)] upon the revocation of release regardless of the reason for the revocation."); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) ("District courts have consistently . . . held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

The undersigned agrees that § 241.4(l)(2) requires the government to provide the notice of revocation described in § 241.4(l)(1). In addition to the above textual reasoning, this conclusion is bolstered by the reality that "[b]oth 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 were intended to provide due process protections to [non-citizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Constantinovici*, 2025 WL 2898985, at *5 (internal quotation marks omitted). Respondents' interpretation would result in more due process protections for non-citizens who violated their OOS than for those who did not, which is an absurd result. *See id.* Respondents therefore violated § 241.4 when they failed to provide Petitioner a notice and reasons for his revocation of release.

The Court also notes that 8 C.F.R. § 241.4(l)(3) provides for a review process consisting of "notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release

is revoked." This provision applies to re-detentions governed by § 241.4(l)(2). *See Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *5 (W.D. Okla. Jan. 15, 2026) ("[T]he notice and interview requirements of § 241.4(l)(3) apply to revocations conducted pursuant to § 241.4(l)(2)"). While the record shows that ICE transmitted a Notice to Alien of File Custody Review, (ECF No. 1-1), the record does not reflect that Petitioner received the interview required by this regulation.

### 3. Conclusion

The undersigned finds that Respondents have failed to show that ICE abided by its own regulations in revoking Petitioner's OOS, making the revocation unlawful. "ICE, like any agency, has the duty to follow its own federal regulations. As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)); *see Qui v. Carter*, 2025 WL 2770502, at *1-2 (D. Kan. Sep. 26, 2025) (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective). The undersigned recommends the Court join the "majority of district courts [that] have found such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025) (collecting cases).

**C.    ICE's Failure to Abide by its Regulations Warrants Immediate Release**

Based on ICE's violation of its own regulations, the undersigned concludes that Petitioner's detention is unlawful and that his release is appropriate under 28 U.S.C. § 2241(c)(3). This Court has found that "by mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment. A wholesale failure to provide the required notice and the mandated interview—thereby depriving the individual of any meaningful opportunity to contest the revocation of release—implicates those constitutional protections directly." *Li*, 2026 WL 475133, at *3. Thus, "Respondents are mistaken in concluding that this Court may not grant habeas relief solely because the text of § 2241(c)(3) fails to contain an explicit proviso authorizing the writ for violations of a federal regulation." *Id.* "ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and . . . his release is therefore appropriate." *Ye v. Bondi*, No. CIV 25-1230-D, 2025 WL 3485420, at *3 (W.D. Okla. Dec. 4, 2025). As one court stated:

> Nothing in this Opinion constitutes a judgment on the Government's policy decision to devote public resources to removing as many aliens as it can. That is a political choice that is not before the Court. And, indeed, the Government's own regulations, as discussed above with respect to Section 241.4(l)(2), grant it enormous discretion regarding when and how the previously-authorized release of removable aliens may be revoked. But that discretion is not unlimited. If the Government does choose to embark upon a campaign of mass removal, the Constitution, its guarantees of due process to all persons present in the United States, and the rule of law all demand that detention and removal be conducted lawfully. The lawful revocation of [Petitioner's] supervised release presents a low bar to the Government, and they may yet choose to clear it, but they have not done so on the present record and accordingly [Petitioner] must be released from custody immediately.

*E.M.M. v. Almodovar*, 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025) (finding that ICE violated § 241.4 because an assistant field office director is not authorized under that regulation to revoke an OOS).

## VI.   PETITIONER'S OTHER CAUSES OF ACTION AND REQUESTS FOR RELIEF

Because the undersigned recommends habeas relief, the Court should decline to address Petitioner's remaining arguments as to how the revocation of his release or his detention is otherwise unlawful. *See Sanchez*, 2025 WL 3484756, at *1 (declining to reach petitioner's *Zadvydas* claim after agreeing with him on his regulatory violation claim); *see also Ye*, 2025 WL 3485420, at *2 n.2 (acknowledging the Magistrate Judge did not consider petitioner's remaining arguments for habeas relief after recommending habeas relief on the regulatory violation). Further, considering the recommended relief, the Court need not address Petitioner's request for declaratory judgment and permanent injunctive relief.

## VII.   RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends that the Petition for Writ of Habeas Corpus (ECF No. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241**. The undersigned recommends that the Court order Respondents to **release Petitioner from custody immediately**, under the terms of his previous Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). The undersigned

further recommends that the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **April 2, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).[7] If a party wishes to respond to the other party's objections, such response must be filed not later than **April 6, 2026**. *See* Fed. R. Civ. P.72(b)(2).The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on March 24, 2026.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[7] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker*, 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").